UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
BRAVIA CAPITAL PARTNERS, INC.,                    :
                                                  :
                        Plaintiff,                :
                                                  :
           -against-                              :        **MEMORANDUM AND ORDER**
                                                  :
MARYANNE FIKE,                                    :        09 Civ. 6375 (JFK)(KNF)
                                                  :
                        Defendant.                :
------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE


## INTRODUCTION

   Before the Court is defendant Maryanne Fike's ("Fike") application, pursuant to Federal

Rule of Civil Procedure 37, for an award of the reasonable attorneys' fees she incurred in

making her motion to compel plaintiff Bravia Capital Partners, Inc. ("Bravia") to make

disclosures in response to her discovery demands.  Bravia opposes the application, contending

that the attorneys' fees Fike seeks are not reasonable.

## BACKGROUND

   On October 23, 2012, during a telephonic conference, the Court entertained arguments

from the parties regarding Fike's motion to compel, Docket Entry No. 102, and resolved the

motion.  Through that motion, Fike sought:

   an Order: (i) compelling Bravia to produce all documents responsive to Fike's
   document[] [requests] within Bravia's 'possession, custody and control,' (ii)
   compelling Bravia to explain[,] by affidavit[,] the circumstances of the shipment of
   responsive documents off Bravia's premises; (iii) requiring Bravia to pay the
   reasonable expenses incurred by Fike resulting from Bravia's conduct, including the
   necessity of making this motion and obtaining third party discovery to identify

plainly responsive documents; and (iv) otherwise sanctioning Bravia as the Court deems appropriate.

In Bravia's submissions in opposition to Fike's motion to compel, Bravia contended that it had provided Fike with some materials responsive to her discovery demands, after the motion to compel had been filed. Furthermore, in a declaration filed in opposition to the motion to compel, Bharat Bhise ("Bhise"), Bravia's chief executive officer, stated that he had sent materials responsive to Fike's discovery demands out of the country, and had not informed his present counsel of the existence of responsive materials timely. The Court granted, completely, that portion of Fike's motion seeking the production of documents, by directing Bravia to produce to Fike any undisclosed materials responsive to her discovery demands.

On October 24, 2012, the Court directed Fike to "serve and file competent evidence establishing the reasonable expenses and attorney's fees she incurred in making the motion to compel." In support of Fike's application for attorneys' fees, her counsel, Herbert Rubin, Esq. ("Rubin") of Herzfeld & Rubin, P.C. ("Herzfeld P.C."), prepared and submitted to the Court: (1) a declaration; and (2) a copy of an invoice generated from the time and billing records of the Herzfeld P.C. attorneys who worked on the motion to compel. Rubin's declaration states that

> [e]ach entry on the annexed invoice . . . reflects time records by an attorney for tasks performed or an expense actually incurred, . . . . The necessary tasks included, without limitation, preparation of communications to the Court seeking an informal conference related to seeking to compel production of documents, responding to Bravia's various letters in connection with Fike's discovery requests, preparation of formal motion papers and reply papers including declarations and exhibits, meetings and conferences with Ms. Fike related to same, and two telephonic hearings before Magistrate Judge Kevin Nathaniel Fox.

-2-

In addition, according to Rubin, "[t]he standard hourly billing rates for the attorneys who worked on the items enumerated in the invoice, based on each attorney's experience and expertise, are as follows: Herbert Rubin $475 per hour; Maureen D. Fogel [("Fogel")] $400.00 per hour; Mark A. Weissman [("Weissman")] $375 per hour; and Bryan Lipsky [("Lipsky")] $225 per hour. . . . The total reasonable attorney [sic] fees for making of Fike's motion to compel was $48,517.50." The documents submitted by Fike, with her initial moving papers, do not describe the "experience and expertise" of each Herzfeld P.C. attorney who worked on the motion to compel; nor do they provide any information, beyond that which is identified above, that may be used to evaluate the reasonableness of the fees sought by Fike, such as information explaining why it was necessary to expend the number of hours billed to Fike to prosecute the motion to compel. The fees sought by Fike, as detailed in the invoice she submitted, are reproduced below in the chart labeled: "Fike's Invoice for Attorneys' Fees."

### FIKE'S INVOICE for ATTORNEYS' FEES

| Description | Date | Empl | Hours | Amount Billed |
|---|---|---|---|---|
| "Draft letter to Magistrate; research for same; research for same; confer with M. Fogel; confer with Herbert Rubin." | 4/18/12 | MW | 2 | $ 750.00 |
| "Conference Fogel and Weissman re response letter to Magistrate." | 4/18/12 | MW | 1.2 | $ 570.00 |
| "Draft and revise letter to Magistrate."[1] | 4/19/12 | MW | 2 | $ 1,500.00 |
| "Confer with client; draft and revise letter to court." | 4/20/12 | MW | 1 | $ 375.00 |
| "Review supplemental production; review House letter to Court; draft and revise letter to Magistrate." | 4/23/12 | MW | 2 | $ 750.00 |
| "Review supplemental production; draft and revise letter to Magistrate." | 4/24/12 | MW | 2 | $ 750.00 |
| "Revise and file letter to Magistrate; emails with client." | 4/25/12 | MW | 3 | $ 1,125.00 |

---

[1]     In her reply memorandum of law, Fike indicated that "[t]he 2 hours of time billed on April 19, 2012 by Attorney Weissman was mistakenly billed at $1500[.00], when it should have been $750[.00] ($375[.00] x2 [hours]). This was an accounting error."

-3-

| | | | | |
|---|---|---|---|---|
| "Received and reviewed various emails from M. Fike. Conference with M. Weissman." | 4/26/12 | HR | 0.6 | $ 285.00 |
| "Prepare correspondence to court." | 4/26/12 | MDF | 0.5 | $ 200.00 |
| "Draft and revise letter to Magistrate; confer with H. Rubin; emails with client." | 4/27/12 | MW | 2 | $ 750.00 |
| "Conference Weissman re letter to Magistrate." | 4/27/12 | HR | 0.8 | $ 380.00 |
| "Review letter from [William] House [counsel to Bravia]; draft and revise letter to Magistrate; e-mails with . . . House." | 5/10/12 | MW | 2 | $ 750.00 |
| "Conference with M. Weissman regarding new documents emailed from W. House.  Reviewed and revised letter to Magistrate emailed from M. Weissman.  Received and reviewed various emails from M. Weissman and M. Fike regarding production." | 5/11/12 | HR | 2 | $ 950.00 |
| "Review multiple correspondence between the parties regarding discovery dispute; correspondence to [the] Court and discussion with partners." | 5/11/12 | MDF | 3 | $ 1,200.00 |
| "Draft and revise letter to Magistrate; review letter from Bill House." | 5/11/12 | MW | 2.5 | $ 937.50 |
| "Review correspondence regarding discovery dispute and comment." | 5/14/12 | MDF | 0.5 | $ 200.00 |
| "Prepare for and attend teleconference before Magistrate Fox; conferences with H. Rubin and M. Fogel; confer with B. Lipsky regarding research." | 5/15/12 | MW | 5 | $ 1,875.00 |
| "Conference with Weissman." | 5/15/12 | HR | 1.4 | $ 665.00 |
| "Conference with M. Weissman regarding research and motion for discovery." | 5/15/12 | BL | 0.5 | $ 112.50 |
| "Emails; draft motion to compel; research." | 5/22/12 | MW | 3 | $ 1,125.00 |
| "Draft motion to compel; confer with M. Fogel; review Edogawa production; confer with client." | 5/23/12 | MW | 4 | $ 1,500.00 |
| "Draft and revise motion to compel." | 5/24/12 | MW | 3.5 | $ 1,312.50 |
| "Emails; draft and revise motion to compel." | 5/29/12 | MW | 2 | $ 750.00 |
| "Draft and revise motion to compel; research for motion ; confer with Bryan Lipsky regarding research." | 5/29/12 | MW | 5 | $ 1,875.00 |
| "Researched re motion to compel." | 5/29/12 | BL | 3.6 | $ 810.00 |
| "Draft and revise motion to compel." | 5/30/12 | MW | 6 | $ 2,250.00 |
| "Research re: case law regarding motion to compel." | 5/30/12 | BL | 0.4 | $ 90.00 |
| "Draft and revise motion to compel." | 5/31/12 | MW | 5 | $ 1,875.00 |
| "Received and reviewed and edited memo of law and declaration." | 6/1/12 | HR | 2.4 | $ 1,140.00 |
| "Draft, revise and distribute revised motion to compel and supporting documents." | 6/1/12 | MW | 7.5 | $ 2,812.50 |
| "Research re: motion to compel." | 6/1/12 | BL | 5.5 | $ 1,237.50 |
| "Research re: motion to compel." | 6/3/12 | BL | 3 | $ 675.00 |
| "Draft and revise motion to compel." | 6/4/12 | MW | 4 | $ 1,500.00 |
| "Finalize and file motion to compel." | 6/6/12 | MW | 5 | $ 1,875.00 |
| "Received and reviewed documents filed by William House. Conference with M. Weissman regarding documents. Telephone conversations with M. Fike." | 6/26/12 | HR | 2 | $ 950.00 |
| "Review motion papers regarding discovery." | 6/26/12 | MDF | 1.1 | $ 440.00 |
| "Confer with client; confer with Herb Rubin; review Bravia opposition papers." | 6/26/12 | MW | 5 | $ 1,875.00 |

| | | | | |
|---|---|---|---|---|
| 'Reviewed plaintiff's submissions; [Bharat] Bhise Declaration and accompanying documents, [Yuanfang] Yan's Declaration, [Fran] Mikaloff Declaration and accompanying documents, W. House Declaration and accompanying documents; correspondence regarding same." | 6/26/12 | BL | 3.3 | $ 742.50 |
| 'Reviewed Bharat and W. House Affirmations filed by W. House." | 6/27/12 | HR | 1.5 | $ 712.50 |
| 'Review opposition papers." | 6/27/12 | MW | 1 | $ 375.00 |
| 'Review opposition papers." | 6/28/12 | MW | 2 | $ 750.00 |
| 'Confer with client; draft and revise reply papers." | 6/29/12 | MW | 3 | $ 1,125.00 |
| 'Draft and revise reply papers." | 6/30/12 | MW | 3 | $ 1,125.00 |
| 'Received and reviewed draft Reply Memorandum of Law Support of Motion to Compel. Conference with client and Weissman." | 7/2/12 | HR | 2 | $ 950.00 |
| 'Conference with client. Draft revised reply papers. Conference with Herb Rubin. E-mail correspondence." | 7/2/12 | MW | 6 | $ 2,250.00 |
| 'Review/revise reply brief." | 7/3/12 | MDF | 0.8 | $ 320.00 |
| 'Draft and revise reply papers. Meet with client; conference with Herb Rubin. File reply." | 7/3/12 | MW | 3.3 | $ 1,237.50 |
| 'Conference with client and Weissman-Review revised papers." | 7/3/12 | HR | 1.5 | $ 712.50 |
| | | | | $ 48,517.50 |

In response to Fike's fee application, Bravia submitted: (i) a declaration by its counsel, William House, Esq. ("House"), with exhibits attached thereto consisting of correspondence the parties sent to the Court between April 20 and May 14, 2012; and (ii) a memorandum of law in opposition to the fee application. Bravia contends that the: (1) hourly rates charged by Fike's counsel for legal services are not reasonable and should be reduced by the Court; (2) time expended by defense counsel on pre-motion activities is excessive and includes a substantial amount of time for activities unrelated to Fike's motion to compel; and (3) time claimed for preparing a reply to Bravia's response to Fike's motion to compel should be excluded entirely, as the reply did not add any value to the motion because it did not provide any new information or counter the legal arguments made by Bravia.

According to Bravia, in her fee application, Fike made, "[n]o effort . . . beyond the implied bald say-so of Herbert Rubin [in his declaration,] . . . to show that the hourly rates charged are reasonable." Bravia maintains that, Fike "produced no evidence at all showing the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation." Anticipating that the Court "might take judicial notice of biographical information concerning the [defendant's] attorneys" that appears on Herzfeld P.C.'s Web site, Bravia avers that the Court should not do so, as it was Fike's burden to provide that information to the Court in her fee application. However, Bravia contends that, even if the Court were to take judicial notice of the biographical information of Fike's attorneys appearing on the Herzfeld P.C. Web site, no evidence exists that shows "the hourly rates sought here were more or less in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation, [or demonstrates] the rates were, in the context of this case, reasonable hourly rates—rates that a reasonable paying [client] would be willing to pay to litigate the matter effectively." According to Bravia, "[i]t beggars the imagination to suggest that a reasonable, paying individual client would be willing to pay such fees out of pocket for a simple motion." Additionally, Bravia contends that "nothing in the biographical information available from the firm's web site provides any reason to believe that any expertise or specialized skills or knowledge attorneys Rubin, Fogel, [and] Weissman may possess is necessary for competent litigation of defendant's claims or even has any application in this case." Bravia asserts that, "[t]here doubtlessly are literally thousands of attorneys in New York City having [equivalent] or more experience [than defendant's counsel] in the litigation of contract claims, a large percentage of which likely do not charge paying non-corporate clients the rates sought here."

Bravia contends that Fike's reply to Bravia's opposition to her motion to compel did not provide any new information or counter the legal arguments made by Bravia.   Instead, the "reply papers were devoted to arguing plaintiff's CEO had spoilated evidence and intentionally concealed evidence, and that his account of the arrangement underlying formation of RF Edogawa Aerospace LLC was not credible."

Bravia asserts that "the staffing of this matter (three members of the firm) [was excessive,]" given that the motion to compel was not complex and did not involve novel legal issues.   Furthermore, according to Bravia, neither the multiple entries in the billing records showing conferences between the defendant and her attorneys, the many vague descriptions of the work performed by counsel that appear in the billing records, nor the complexity or legal issues involved in the motion to compel justify the amount of time Fike's counsel expended on that motion or the legal services fees she seeks to obtain from Bravia.   Moreover, Bravia maintains that the attorneys' fees Fike seeks for pre-motion activities are not warranted because most of the pre-motion correspondence the parties sent to the Court was not directly related to the motion to compel.

In reply, Fike submitted a: (i) "Reply Memorandum of Law In Response to Plaintiff's Objection to Fee Submission and in Further Support of Defendant's Fee Submission"; (ii) reply declaration by Rubin, which discusses, inter alia, the backgrounds and professional experiences of Fogel, Weisman and Lipsky; and (iii) document labeled Exhibit A, which is Rubin's "Attorney Profile," detailing his background and experience.   In her reply memorandum of law, Fike contends that her

> fee application is fully supported as work responsive to Bravia's bizarre, abusive and obstructive discovery misconduct in evading document productions, tendering one critical document concededly a fake, another purportedly executed four years after

the transaction to which it relates with signatures foreign to the transaction, denying knowledge about a company Plaintiff caused to be formed whose records it kept until belated shipment out of the jurisdiction and presenting at least one witness who denied knowledge of matters which her work and functions required intimate knowledge.

According to Fike, Herzfeld P.C.'s "standard hourly rates are competitive, if not significantly lower, for a case of this type than rates charged by other commercial litigation firms in this District." In addition, Fike contends that "in view of the repeated, stubborn and contumacious conduct resisting discovery, the number of attorney hours billed was necessary and reasonable for making Fike's motion to compel. . . . [and] [t]his Court should therefore award the amount set forth in Fike's fee application without adjustments."

Fike contends that the hourly rates charged by her attorneys are reasonable, as "the hourly rates used for each of the billing attorneys, including the three firm members all fall below $500. Rubin, who billed his time to Fike at the hourly rate of $475, explains, in his declaration, that he is "an attorney with over 65 years of experience in a vast array of cases and matters . . . [and has] argued more than four hundred appellate cases in various courts." Rubin notes that Fogel, who billed her time to Fike at the hourly rate of $400, "is a Member of the Firm who has been a litigator practicing in complex tort/product liability, mass torts, class actions, commercial litigation and employment related matters. . . . for over 20 years." Rubin maintains that Weissman, who billed his time to Fike at the hourly rate of $375, was the primary drafter of the motion, and "is a Member of the Firm with approximately fifteen years of litigation experience." With respect to Lipsky, who billed his time to Fike at the hourly rate of $225, Rubin asserts that he "is an Associate of the firm practicing primarily in general litigation [and] [h]e is a 2008 graduate of Fordham University [School] of Law."

Fike asserts that "the transactions on which Fike's claims for commissions are . . . based

are highly complex aircraft finance deals which require more commercial experience and expertise than a claim for commissions based, for example, on simple product sales or employee placements."  Therefore, according to Fike, "[t]he case demands an understanding of the ramifications of complex financial transactions which are not necessarily within the capabilities and experience of just any 'contract claim' litigator . . . [and] [a] reasonable [paying] client would be expected to pay more for such expertise . . . notwithstanding Plaintiff's . . . opinion about whether Defendant's attorneys are up to the task."

With respect to her request for legal services fees generated pre-motion, Fike asserts that, because "Local [Civil] Rule 37.2 specifically contemplates that the Court may 'resolve the discovery dispute as a consequence of the conference,' . . . at the time that Fike's request [for a conference regarding the motion to compel] was made, she was more than reasonable in treating the Local [Civil] Rule 37.2 letter requests as a 'preview' of the motion itself, developing and presenting each of her arguments as fully and persuasively as possible and presenting as much information and evidence as possible in the form of exhibits."

In response to Bravia's assertion that Fike's reply to its opposition to her motion to compel added no value, Fike contends that "it is irrelevant whether, viewed in hindsight, a particular argument or point of law made in the briefs 'won' the motion," as the Court's inquiry should be focused on the reasonableness of the time expended by counsel.

In addition, to counter Bravia's assertion that she is requesting attorneys' fees for excessive hours expended by her counsel, Fike contends that Bravia's "objections to the time expended [by her attorneys] preparing the moving papers and the reply papers are impermissibly based on 'hindsight' . . . . Fike ['s counsel] was required to analyze, research and consider facts, arguments and authorities that may or may not have been used in the ultimate product" but were necessary to

make her submissions and arguments persuasive.  Accordingly, Fike maintains that the hourly

rates and the hours expended by her counsel are reasonable, and the time spent by her counsel pre-

motion, and in preparing and defending the motion to compel, are compensable.

Fike also seeks to recover the attorney's fees incurred by her as a consequence of Bravia's

challenge to the reasonableness of her fee application.  Through his declaration, Rubin contends

that he and "Attorney Weissman  . . . expended, in total, more than ten (10) hours in the research

and preparation of these responsive papers between Friday, December 7 [and] Wednesday,

December 12, 2012, exclusive of research and copying charges.  At [his and] Attorney

Weissman['s] . . . standard rates, the additional amount sought is $3,750.00 which is more than

reasonable under the circumstances."  However, with respect to this request for attorneys' fees,

Fike did not provide the Court with: (1) contemporaneous time records; or (2) any information

from which the Court might evaluate the reasonableness of the amount of attorneys' fees she

seeks.

***Legal Standard***

When a motion to compel is granted or disclosure of discovery is made after the motion to

compel is filed, the Court "must, after giving an opportunity to be heard, require the party . . .

whose conduct necessitated the motion . . . or attorney advising that conduct, or both to pay the

movant's reasonable expenses incurred in making the motion, including attorney's fees."  Fed. R.

Civ. P. 37(a)(5)(A).  When exercising their discretion to determine the reasonableness of attorneys

fees, courts in this judicial circuit use the "presumptively reasonably fee" standard.  Arbor Hill

Concerned Citizens Neighborhood Ass'n v. County of Albany, 522 F.3d 182, 190 (2d Cir. 2008).

The presumptively reasonable fee, also known as the lodestar, is the fee a paying client would be

willing to pay for the services rendered, see id., and is "the product of a reasonable hourly rate and

the reasonable number of hours required by the case." Millea v. Metro-North R.R. Co., 658 F.3d

154, 166 (2d Cir. 2011).  In calculating the presumptively reasonable fee, courts must consider,

among others, the twelve factors articulated in Johnson v. Ga. Highway Express, Inc., 488 F.2d

714, 717-19 (5th Cir. 1974).  See Arbor Hill, 522 F.3d at 190.  Those factors are:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the
> level of skill required to perform the legal service properly; (4) the preclusion of
> employment by the attorney due to acceptance of the case; (5) the attorney's
> customary hourly rate; (6) whether the fee is fixed or contingent; (7) the time
> limitations imposed by the client or the circumstances; (8) the amount involved in
> the case and the results obtained; (9) the experience, reputation, and ability of the
> attorneys; (10) the "undesirability" of the case; (11) the nature and length of the
> professional relationship with the client; and (12) awards in similar cases.

Id. at 186-87 n.3.

"[T]he burden is on the fee applicant to produce satisfactory evidence—in addition to the

attorney's own affidavits—that the requested rates are in line with those prevailing in the

community for similar services by lawyers of reasonably comparable skill, experience and

reputation." Blum v. Stenson, 465 U.S. 886, 896 n.11, 104 S. Ct. 1541, 1547 n.11 (1984).  In

order to evaluate a fee application, a court must be presented with information sufficient for it to

determine the: (1) number of hours reasonably expended by counsel; and (2) prevailing rates in the

relevant community for similar services by attorneys of reasonably comparable skill, expense and

reputation.  See Hensley v. Eckerhart, 461 U.S. 424, 433, 103 S. Ct. 1933, 1939 (1983); see also

McDonald v. Pension Plan of the NYSA-ILA Pension Trust Fund, 450 F.3d 91, 96 (2d Cir. 2006).

A court evaluating a fee application is required to "examine the particular hours expended by

counsel with a view to the value of the work product of the specific expenditures to the client's

case, and if it concludes that any expenditure of time was unreasonable, it should exclude [those]

hours from the calculation of the reasonable fee." Konits v. Karahalis, 409 Fed. Appx. 418, 421

(2d Cir. 2011) (quoting Luciano v. Olsten Corp., 109 F.3d 111, 116 (2d Cir. 1997) (internal

quotation marks and punctuation omitted).  In addition, a fee application that is not supported by

evidence of "contemporaneous time records indicating, for each attorney, the date, the hours

expended, and the nature of the work done," should normally be denied.  New York State Ass'n

for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1154 (2d Cir. 1983).

When parties engage in motion practice, "reply papers may properly address new material

issues raised in the opposition papers so as to avoid giving unfair advantage to the answering party."

Bayway Ref. Co. v. Oxygenated Mktg. & Trading, 215 F.3d 219, 226-27 (2d Cir. 2000) (citation

omitted).  However, "[a]rguments may not be made for the first time in a reply brief."  Knipe v.

Skinner, 999 F.2d 708, 711 (2d Cir. 1993).

*Application of Legal Standard*

The portion of Fike's motion to compel, that was made pursuant to Rule 37(a)(1), was

granted in full, and Bravia produced responsive materials after Fike filed her motion.  Therefore,

the Court "must" award Fike the "reasonable expenses incurred in making the motion."  Fed. R.

Civ. P. 37(a)(5)(A).  However, in her initial moving papers, Fike failed to submit any evidence

regarding the reasonableness of the fees she incurred in connection with the motion to compel.  In

support of her fee application, Fike submitted, initially, Rubin's declaration, and a "detailed

invoice," based on the time and billing records of the Herzfeld P.C. attorneys who worked on the

motion to compel, and identifying the tasks performed and the hours expended on those tasks.  In

her initial moving papers, Fike failed to provide evidence establishing the: (a) backgrounds and

experiences of her attorneys;[2] (b) "rates [charged by her attorneys] are in line with those prevailing

---

[2]    The Court may take judicial notice of the biographies of Fike's attorneys, which are available on the firm's Web site, see Fed. R. Evid. 201.  However, even if the Court were to exercise its discretion to take such

(continued...)

in the community for similar services by lawyers of reasonably comparable skill, experience and reputation," Blum, 456 U.S. at 896 n.11, 104 S. Ct. at 1547 n.11; or (c) reasonableness of the hours expended by her attorneys.  Fike attempted to cure these deficiencies by submitting, through Rubin's reply declaration: (i) biographical information concerning her attorneys and the reasonableness of the attorneys' fees she incurred; and (ii) a reply memorandum of law, through which she argued, inter alia, that the attorneys' fees she incurred in connection with the motion to compel are reasonable.  However, it was not proper for Fike to submit, for the first time in her reply to the plaintiff's challenge to her fee application, evidence and arguments justifying the reasonableness of the fees sought.  See Bayway Ref. Co., 215 F.3d at 226-27.  Fike was obligated, in her initial moving papers, not in her reply, to provide evidence supporting the reasonableness of both the attorneys' fees she incurred on the motion to compel, and the hours expended by her counsel on that motion.  By failing to provide any evidence of reasonableness in her initial moving papers, Fike deprived Bravia of the opportunity to analyze her fee application by considering, inter alia, the Johnson factors, which Bravia could reasonably anticipate that the Court would weigh when it performed its analysis of the fully submitted application.  Since Fike's reasonableness evidence was submitted to the Court for the first time in her reply papers, the Court must consider that fact, and the impact that her failure had on Bravia's ability to challenge her fee application.

In addition, the Court observed, when reviewing the Herzfeld P.C. invoice Fike submitted to it, that many of the task descriptions associated with the invoice entries do not explain sufficiently the relationship between the task(s) identified and the motion to compel.  For example, the description associated with a June 26, 2012 entry reads as follows: "Confer with client; confer

---

[2](...continued)

judicial notice, Fike's application was still devoid of any evidence supporting her contention that the fees she seeks are reasonable.  See Arbor Hill, 522 F.3d at 190.

with Herb Rubin; review Bravia opposition papers." Without more information, the Court is unable to determine: (1) how two of the three tasks noted in the entry relate to the motion to compel; and (2) why it is reasonable for the Court to award Fike attorneys' fees with respect to the tasks described. Based on the vague descriptions in many of the entries on Herzfeld P.C.'s invoice, and the limited information provided in Fike's submissions, the Court is unable to determine the reasonableness of many of the hours expended by Fike's attorneys with respect to the motion to compel.

### 1.    *Reasonableness of Hourly Rates*

After reviewing the information in Fike's reply memorandum, regarding the experience and qualifications of her attorneys, the Court finds that the hourly rates charged by the Herzfeld P.C. attorneys who worked on the motion to compel: (a) $375 for Rubin; (b) $400 for Fogel; (c) $375 for Weissman; and (d) $225 for Lipsky are reasonable in comparison to the rates charged by attorneys with similar experiences and qualifications who practice in the Southern District of New York. See Underdog Trucking, L.L.C. v. Verizon Services Corp., 276 F.R.D. 105, 109 (S.D.N.Y. 2011) (approving hourly rates, for a successful motion to compel, at $550 for a partner with over 20 years of litigation experience; $221 for an associate with approximately 6 years of experience; and $208.25 for an associate with approximately 2 years of experience.); see also Sheehan v. Metro. Life Ins. Co., 450 F. Supp. 2d 321, 327-28 (S.D.N.Y. 2006) (approving an hourly rate of $425 for a partner with thirty-five years of experience); see also Imbeault v. Rick's Cabaret Int'l Inc., No. 08 Civ. 5458, 2009 WL 2482134, at *4-5 (S.D.N.Y. August 13, 2009) (approving an hourly rate of $325 for an associate with approximately eight years of experience). Furthermore, in weighing the Johnson factors noted above, the Court finds that the complex nature of the instant action militates in favor of finding that the rates charged by Fike's attorneys are reasonable.

**2.      *Reasonable Hours Expended***

In light of the deficiencies in Fike's fee application, which are discussed above, the Court has determined to award Fike attorneys' fees that are less than the amount of attorneys' fees she requested through her application.  The Court has excluded, from Fike's application, those fees that are associated with invoice entries that: (a) reflect duplicative work; or (b) have vague descriptions that do not identify clearly the relationship between the work described, and the motion to compel.  See Kontis, 409 Fed. Appx. at 421 (noting that when reviewing a fee application, if a court concludes that "any expenditure of time [is] unreasonable," it may exclude those hours from a fee award.); see also Bliven v. Hunt, 579 F.3d 204, 213 (2d Cir. 2009) (stating that a court may eliminate hours from a fee application if it finds that they are "excessive, redundant, or otherwise unnecessary.") (citation omitted); see also Ryan v. Allied Interstate, Inc., 882 F. Supp. 2d 628, 636-37 (S.D.N.Y. 2012) (decreasing an award of attorney's fees because of vague and excessive billing entries).  Having done so, the Court finds that Fike's compensable attorneys' fees, as indicated in the chart below titled "Compensable Fees," are: $20,877.50.  The fees that the Court deems to be appropriate are listed in the chart.

**Compensable Fees**

| Description | Date | Empl | Hours | Amount Billed |
|---|---|---|---|---|
| "Draft motion to compel; confer with M. Fogel; review Edogawa production; confer with client." | 5/23/12 | MW | 4 | $      1,500.00 |
| "Draft and revise motion to compel." | 5/24/12 | MW | 3.5 | $      1,312.50 |
| "Draft and revise motion to compel; research for motion; confer with Bryan Lipsky regarding research." | 5/29/12 | MW | 5 | $      1,875.00 |
| "Researched re motion to compel." | 5/29/12 | BL | 3.6 | $         810.00 |
| "Draft and revise motion to compel." | 5/30/12 | MW | 6 | $      2,250.00 |
| "Research re: case law regarding motion to compel." | 5/30/12 | BL | 0.4 | $           90.00 |
| "Draft and revise motion to compel." | 5/31/12 | MW | 5 | $      1,875.00 |

| | | | | | |
|---|---|---|---|---|---|
| "Received and reviewed and edited memo of law and declaration." | 6/1/12 | HR | 2.4 | $ | 1,140.00 |
| "Research re: motion to compel." | 6/1/12 | BL | 5.5 | $ | 1,237.50 |
| "Finalize and file motion to compel." | 6/6/12 | MW | 5 | $ | 1,875.00 |
| "Received and reviewed documents filed by William House. Conference with M. Weissman regarding documents. Telephone conversations with M. Fike." | 6/26/12 | HR | 2 | $ | 950.00 |
| "Confer with client; confer with Herb Rubin; review Bravia opposition papers." | 6/26/12 | MW | 5 | $ | 1,875.00 |
| "Review opposition papers." | 6/27/12 | MW | 1 | $ | 375.00 |
| "Review opposition papers." | 6/28/12 | MW | 2 | | 750.00 |
| "Confer with client; draft and revise reply papers." | 6/29/12 | MW | 3 | $ | 1,125.00 |
| "Draft and revise reply papers." | 6/30/12 | MW | 3 | $ | 1,125.00 |
| "Conference with client and Weissman-Review revised papers." | 7/3/12 | HR | 1.5 | $ | 712.50 |
| | | | | $ | 20,877.50 |

By failing to provide any information with respect to the reasonableness of the fees sought, Fike deprived Bravia of an opportunity to challenge the reasonableness of her fee application fully and competently.  When this is considered, along with the other deficiencies in the fee application the Court has identified, it is appropriate to reduce, by 40%, the amount that Fike may recover from the fees that the Court deems compensable.  See McDonald, 450 F.3d at 96 ("A district court may exercise its discretion and use a percentage deduction as a practical means of trimming fat from a fee application."); see also S.E.C. v. Goren, 272 F. Supp. 2d 202, 213 (E.D.N.Y. 2003) (reducing a fee request by "60% overall, due to the lack of detail in [the] fee application."). Correspondingly, the Court awards Fike attorneys' fees in the amount of $12,526.50.

In addition, Bhise's declaration, which was filed in opposition to the motion to compel, indicates that he sent documents responsive to Fike's discovery demands out of the country, and

did not reveal timely to his counsel the existence of documents responsive to Fike's discovery demands. Inasmuch as a corporate entity like Bravia can act only through its representatives, and Bhise is Bravia's chief executive officer, in the instant case, Bravia's conduct, and not that of its counsel "necessitated the motion" to compel. Fed. R. Civ. P. 37(a)(5)(A). Therefore, Bravia – not its counsel – must pay the reasonable attorneys' fees that Fike incurred with respect to the motion to compel.

Fike's request for the attorneys' fees she incurred, in connection with the reply she submitted to Bravia's challenge to her fee application, is not supported by contemporaneous time records from her attorneys, as is required, see Carey, 711 F.2d at 1154. Furthermore, Fike failed to provide any evidence establishing that the attorneys' fees she seeks with respect to the reply are reasonable, as she must. See Arbor Hill, 522 F.3d at 190. Consequently, no basis exists for the Court to award Fike the attorneys' fees she incurred replying to Bravia's response to her fee application.

## CONCLUSION

For the foregoing reasons, Fike's application for attorneys' fees, Docket Entry No. 38, is granted, in part, and she is awarded $12,526.50. That amount shall be paid by Bravia.

Dated: New York, New York        SO ORDERED:
April 19, 2013

_Kevin Nathaniel Fox_
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE